**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 06-cv-01948-REB-BNB

DANIEL E. MURPHY,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS ("CDOC"),
PEGGY HEIL,
DON MORTON,
LARRY TURNER,
PAUL HOLLENBECK, and
MIKE LEEWAYE,

Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

This matter comes before me on the defendants' **Motion for Summary
Judgment Pursuant to Fed. R. Civ. P. 56** [#163][1] filed February 23, 2009 (Motion).
The plaintiff filed a response [#196] and supporting affidavit [#197], and the defendants
filed a reply [#201].  Having the consent of the magistrate judge, I withdraw my **Order of
Reference to Magistrate Judge** [#11] entered January 9, 2007, as to the pending
motion for summary judgment [#163].  In a separate order issued concurrently with this
order, I grant the plaintiff's motion [#198] to present additional evidence in support of his
response to the motion for summary judgment.  I have considered the additional
evidence included with the plaintiff's motion [#198].  I grant the defendants' motion for

---

[1]   "[#163]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

summary judgment.

## I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  *Concrete Works*, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert.*

*denied*, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

Because plaintiff is proceeding *pro se*, I have construed his filings generously and with the leniency due *pro se* litigants.  ***See Erickson v. Pardus***, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007); ***Andrews v. Heaton***, 483 F.3d 1070, 1076 (10th Cir. 2007); ***Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991).  Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  ***Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991).

At some points, the defendants speak in their Motion in terms of failure to state a claim on which relief can be granted, which is the traditional language of a motion to dismiss under FED. R. CIV. P. 12(b)(6).  However, the defendants rely on evidence they have submitted in support of their Motion, and they argue that the plaintiff has failed to present evidence on certain issues.  In this context, I evaluate the defendants' arguments as arguments in support of a motion for summary judgment.

### III.   UNDISPUTED MATERIAL FACTS & PROCEDURAL BACKGROUND

The plaintiff previously was incarcerated in the Colorado Department of Corrections ("CDOC").  On or about February 21, 2003, he was transferred to the Idaho Department of Corrections under a new name.  *Motion*, Ex. A-1, ¶¶ 4-6; *Prisoner's First Amended Complaint* [#144] filed September 25, 2008, p. 4.

The plaintiff is serving a sentence of 20 years to life as a result of a conviction for first degree murder.  Initially, the plaintiff was convicted of first degree murder and

sexual assault on a child.[2]  The convictions were overturned on appeal.  The plaintiff

then pled guilty to first degree murder.  He received a sentence of 20 years to life, and

all other charges were dropped.  *Motion*, Ex. A-1, ¶ 9.  The plaintiff pled guilty to the

crime of murdering a female child on the night before her second birthday.  The victim

was found lying dead on a couch and had suffered a severe beating all over her body.

The openings of her vagina and uterus were torn.  There also were indications of

trauma to her rectum and severe internal bleeding.  During the plaintiff's parole

interview on November 26, 2006, the plaintiff denied raping his victim, but admitted to

putting his fingers in her vagina.  *Id.*, ¶ 8.

Under Colorado Department of Corrections Administrative Regulation (AR) 700-

19, all inmates who are received by the Colorado Department of Corrections (CDOC)

are given a sex offender classification rating to allow the CDOC to assess their

treatment and rehabilitation needs.  *Motion*, Ex. A-2, ¶ 8.  Inmates are rated on a five-

level sexual violence scale.  *Id.*, ¶ 9 and first attachment to Exhibit A-2 (AR 700-19), §

IV.A.  Offenders with an S-4 rating, like the plaintiff, are defined as follows:

> Offenders who have a history of sexual assaults or deviance
> for which they may not have been convicted.  These cases
> often involve plea bargains where the factual basis of the
> crime involved a sex offense.  This category also includes
> misdemeanor convictions and juvenile convictions for sex
> offenses.

Id. at § IV(A).  Inmates who receive an S-4 classification are recommended for

treatment in the Sex Offender Treatment and Management Program ("SOTMP").  *AR*

---

[2]  The plaintiff asserts that he originally was convicted of Second Degree Sexual
Assault on a Child.  *Plaintiff's Response and Objections to Defendants' Motion for
Summary Judgment* [Doc. #196], p. 5, ¶ 1.  This statement is not sworn, however, and
is not competent evidence.  In any event, the precise category of the plaintiff's
conviction for sexual assault on a child is not a fact that is material to the resolution of
this case.

*700-19*, § IV.E.   Under AR 750-02, inmates who are under consideration for S-4 sex offender classification are given a hearing. *Motion*, Ex. A-3 and first attachment to Ex. A-3 (AR-750-02), § IV.  The plaintiff was classified as an S-4 sex offender after a hearing on July 12, 2000.[3]  *Motion*, Ex. A-2, ¶¶ 5-6.

The plaintiff's ***Prisoner's First Amended Complaint*** [#144] filed September 25, 2008 (Amended Complaint), is the operative complaint.  The plaintiff asserts two claims for relief.  In Claim One, the plaintiff alleges that the actions of defendants Heil, Hollenbeck, Morton, Turner, and Leewaye, "have resulted in plaintiff's wrongful classification as a S4 level sex offender under Colorado's sex offender treatment and monitoring program, thus, abrogating the plaintiff's right to that due process and equal protection guaranteed under the 5th and 14th Amendments to the United States Constitution." *Amended Complaint*, p. 5.  In Claim Two, the plaintiff alleges that defendants Morton, Turner, and Leewaye, "have failed individually and/or collectively in their duty, under state law, to provide a safe environment where the plaintiff may participate in a sex offender program whose completion would result in the reestablishment of his eligibility for parole, thereby, violating plaintiff's rights to due process and to be free from cruel and unusual punishment pursuant to the 5th, 8th, and 14th Amendments to the United States Constitution." *Id.*, pp. 6-7.[4]  The plaintiff seeks

---

[3]  In his Complaint, the plaintiff states that defendant Hollenbeck "elected to classify him as a sexual offender requiring treatment in 1982." *Complaint*, p. 5. However, the plaintiff does not dispute the defendants' statement in their Motion that he was classified as an S-4 sex offender in 2000.  Because it is more advantageous to the plaintiff when calculating the limitations period, I have applied the 2000 date.

[4]  To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized. ***See Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

declaratory and injunctive relief and compensatory and punitive damages.  *Id.*, p. 9.

## IV.  CLAIM ONE

In Claim One, the plaintiff alleges that the defendants wrongfully classified him as

a sex offender.  *Amended Complaint*, p. 5.  The plaintiff alleges further that he "has

repeatedly and individually approached each of the defendants several times, requesting

reconsideration of his classification as a S4 sex offender."  *Id.*  The plaintiff alleges also

that the defendants "have engaged in an on-going pattern which violates the plaintiff's

right to challenge his classification as a S4 level sex offender and thereby have

precluded his ability to meet the eligibility requirements for parole consideration."  *Id.*, p.

6.[5]

### A.  Statute of Limitations - Initial Sex Offender Classification

The defendants assert that Claim One is barred by the statute of limitations

because the plaintiff was classified as an S-4 sex offender on July 12, 2000, and the

period of limitations expired long before the plaintiff filed this lawsuit.  Actions asserted

under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the

state in which the action arose.  *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994).

The appropriate statute of limitation for §1983 actions arising in Colorado is two years.

*Id*. at 1266; §13-80-102, C.R.S.   Federal law rather than state law determines when a

cause of action accrues.  *See Industrial Constructors Corp. v. United States Bureau*

*of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994).  "The statute of limitations begins to

run when the plaintiff knows or has reason to know of the existence and cause of the

injury which is the basis of his action."  *Id*. at 969.  "A civil rights action accrues when

_____

[5] I address the plaintiff's allegations regarding parole eligibility in my analysis of
Claim Two.

facts that would support a cause of action are or should be apparent." ***Fratus v. Deland***, 49 F.3d 673, 675 (10th Cir. 1995).

It is undisputed that the plaintiff was classified as an S-4 sex offender after a hearing on July 12, 2000.  The plaintiff received notice of the decision on July 12, 2000. *Motion*, Ex. A-5, ¶ 5 and first attachment.  Therefore, to the extent the plaintiff is challenging his initial classification as an S4 sex offender, the statute of limitations began to run on July 12, 2000.  Absent tolling, the limitations period expired on July 12, 2002.  The plaintiff does not argue or demonstrate that he is entitled to tolling.[6]  The plaintiff did not initiate this case until September 18, 2006, when he filed his motion for leave to proceed *in forma pauperis* [#1].  Thus, the plaintiff's challenge to his initial classification as an S-4 sex offender is barred by the statute of limitations.

The plaintiff claims that the defendants' statute of limitations argument "has already been dispensed with by the District Court's Order Adopting the Recommendation of the Magistrate Judge, handed down on March 3rd 2008 and viewing this as a continuous tort." *Response*, p. 6.  In a previous order [#113] in this case, I addressed the defendants' statute of limitations argument as asserted in the defendants' motion to dismiss [#25].  My conclusions in that order [#113] resolved the statute of limitations issue in the limited context of a motion to dismiss.  However, my previous order [#113] in no way precludes the defendants from providing evidence to support their statute of limitations argument in the context of a motion for summary

---

[6]  I note that the plaintiff asserts he was a patient at San Carlos Mental Health Facility and on "a variety" of prescription medications.  *Plaintiff's Affiavit* [sic] *in Support of Response and Objections to Defendants' Motion for Summary Judgment* [Doc. #197], ¶¶ 8-9; *Response*, p. 5.  Even if these statements could be construed as an argument for tolling, the plaintiff has not provided any evidence to show the dates he was in the facility, the medications he was taking, or any effects the medications had on him.

judgment, as they now have done.  Again, I conclude on the undisputed factual record that the plaintiff's challenge to his initial classification as an S-4 sex offender, which occurred on July 12, 2000, is barred by the statute of limitations.  Thus, the defendants are entitled to summary judgment on the plaintiff's claim that his constitutional rights were violated when he was classified initially as a sex offender.

## B.  Reconsideration of Sex Offender Classification

The plaintiff alleges also that the defendants have repeatedly refused his requests to reconsider his classification as an S4 sex offender.  The defendants are entitled to summary judgment on this aspect of the plaintiff's Claim One because the plaintiff does not have a due process right to reconsideration of his sex offender classification.

The Due Process Clause prohibits the government from depriving a person of life, liberty, or property without prior notice and an opportunity for a hearing.  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985).  "To invoke the protections of procedural due process, a plaintiff must establish the existence of a recognized property or liberty interest."  *Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384, 1394 (10th Cir. 1988) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)).  In the context of a sex offender classification, the courts have found a liberty interest when labeling a prisoner as a sex offender is coupled with the "coercive element" of conditioning parole eligibility or receipt of good time credits on completion of a sex offender treatment program.  *Beierle v. Zavares*, 215 F.3d 1336, 2000 WL 757725, *4 (10th Cir. June 12, 2000); *Chambers v. Colorado Dept. of Corrections*, 205 F.3d 1237, 1242 (10th Cir. 2000) (stating that the

8

DOC had not created a liberty interest in the plaintiff's *not* being classified as a sex offender; the liberty interest was implicated when the DOC removed the plaintiff's earned time credits).  ***See also Gwinn v. Awmiller***, 354 F3d 1211, 1216 (10th Cir. 2004) (stating that damage to an inmate's reputation by labeling him as a sex offender, without more, is not sufficient to implicate the Due Process Clause).

The process required to classify a prisoner as a sex offender has been described as follows:

> An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process.  Prison officials need do no more than notify such inmate that he has been classified as a sex offender because of his prior conviction for a sex crime.

***Neal v. Shimoda***, 131 F.3d 818, 831 (9th Cir. 1997) (cited with approval in ***Chambers***, 205 F.3d at 1243).

> [A]n inmate who has not previously been convicted of a sex offense may be classified as a sex offender for purposes of a prison treatment program only if the prison affords him the procedural protections . . . set forth in [***Wolff v. McDonnell***, 418 U.S. 539 (1974)]: notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. . . . Additionally, in order to comport with due process, there must be some evidence to support the hearing panel's decision . . . and the decisionmaker must be impartial.

***Gwinn***, 354 F.3d at 1218-19.

Here, the plaintiff was not convicted of a sex crime "as the result of a bench trial, jury trial, or plea agreement."  The plaintiff was classified as an S4 sex offender after a hearing on July 12, 2000.  There is no authority, however,  for the proposition that the

Due Process Clause requires the defendants to provide a mechanism for reconsideration of the plaintiff's sex offender classification. The defendants are entitled to summary judgment on the plaintiff's claim that his right to due process of law was violated when he repeatedly was denied reconsideration of his sex offender classification.

### C. Equal Protection

The plaintiff alleges also that the defendants have violated his right to equal protection of the law, although the basis for the claim is inexplicit. The plaintiff states that AR 700-19 requires that "any offenders graded S3 or above 'will be interviewed by the SOTMP diagnostician' to determine whether they are amendable to and meet the criteria for treatment" and "[i]t is an indisputable material fact that other Colorado sex offenders, similarly situated, have been provided this chance for appellate review of their classification, yet despite numerous requests to all of the defendants for just such a review the plaintiff has yet to be provided that opportunity." *Amended Complaint*, p. 6.

The defendants do not address an equal protection claim in their motion for summary judgment. I conclude that the plaintiff's allegations do not state a claim on which relief can be granted for violation of the plaintiff's right to equal protection of the law. When reviewing a complaint to determine if the plaintiff has stated a claim on which relief can be granted, I must accept all well-pleaded allegations of the complaint as true. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as

distinguished from conclusory allegations, must be taken as true."), *cert. denied*, 538 U.S. 999 (2003). I review the complaint to determine whether it "contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. July 9, 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"(T)he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (emphases in original). In *Twombly*, the Court rejected and supplanted the "no set of facts" standard of *Conley v. Gibson*, 355 U.S.41, 45-46 (1957). The "plausibility" standard and its meaning recently were clarified in *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008). The *Robbins* court concluded that

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

519 F.3d at 1247.

In this case, the plaintiff's conclusory allegation that other similarly situated sex offenders are treated differently than the plaintiff does not suffice to state a plausible claim for violation of his equal protection rights. Rather, this general allegation is vague and conclusory. In addition, the regulation quoted by the plaintiff in his complaint does not require appellate review of the sex offender classification of any CDOC inmate. The regulation provides no support for the plaintiff's purported equal protection claim. The plaintiff filed this case *in forma pauperis*. *Motion to proceed in forma pauperis* [#1] filed

September 18, 2006; *Order Granting Leave To Proceed Pursuant to 28 U.S.C. § 1915* [#7] filed October 31, 2006.  Under 28 U.S.C. § 1915(e)(2)(B)(ii), the court "shall dismiss the case at any time if the court determines that" the action "fails to state a claim on which relief may be granted."  The allegations in the plaintiff's Amended Complaint do not state a claim on which relief can be granted for violation of the plaintiff's right to equal protection of the law.  Thus, exercising jurisdiction and discretion under 28 U.S.C. § 1915(e)(2)(B)(ii), the plaintiff's putative equal protection claim should be dismissed.

### D.  Conclusion - Claim One

The defendants are entitled to summary judgment on Claim One to the extent the plaintiff asserts claims for violation of his right to due process and equal protection.  The plaintiff's claim that his right to due process of law was violated in the course of his initial sex offender classification is barred by the applicable statute of limitations.  Further, the plaintiff does not have a constitutional right to procedural due process requiring reconsideration by the defendants of the plaintiff's sex offender classification.  Finally, the allegations in the plaintiff's Claim One do not state a claim on which relief can be granted for violation of the plaintiff's right to equal protection of the law.

### V.  CLAIM TWO

In Claim Two, the plaintiff alleges that defendants Morton, Turner, and Leewaye, "have failed individually and/or collectively in their duty, under state law, to provide a safe environment where the plaintiff may participate in a sex offender program whose completion would result in the reestablishment of his eligibility for parole thereby violating plaintiff's rights to due process and to be free from cruel and unusual punishment pursuant to the 5[th], 8th, and 14th Amendments to the United States Constitution."  *Amended Complaint*, pp. 6-7.  The plaintiff asserts that he previously was

returned to a Colorado facility to complete a sex offender treatment program, but was violently beaten when other inmates learned of his crime.  *Id.* at p. 7.  He alleges that he was transferred to a second facility and was beaten and sodomized twice.  *Id.*  The plaintiff says he now has "a legitimate fear of what can result by being exposed to the general inmate prison population.  A fear that embodies [his] rights to the protections of the due process and the prohibition against cruel and unusual punishment clauses of the federal constitution."  *Id.*  He requests that the defendants be required to house him "in an out of state facility that provides solely for the treatment of those classified as sex offenders."  *Id.*

### A.  Due Process

The plaintiff appears to allege that his due process rights are being violated because he is unable to attain eligibility for parole.  Such a claim fails, however, because the plaintiff does not have a liberty interest in eligibility for parole.  The Colorado Supreme Court has interpreted the Colorado parole statute determining that the parole board is given the "sole power to grant or refuse to grant parole."  ***See*** §17-2-201(5)(a), C.R.S.;  ***Martinez v. Furlong***, 893 P.2d 130, 131 (Colo. 1995) (*en banc*).  Therefore, "the Colorado statutory scheme does not create a constitutionally protected entitlement to, or liberty interest in, parole."  ***Thompson v. Riveland***, 714 P.2d 1338, 1340 (Colo. App. 1986) (citation omitted ).  Under a discretionary parole scheme, like Colorado's, an inmate is not entitled to due process protections in connection with parole decisions.  ***Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex***, 442 U.S. 1, 7 - 16 (1979).

The plaintiff is serving an indeterminate sentence of 20 years to life.  His Claim Two can be read as both an effort to obtain eligibility for parole and as an attempt to

shorten the duration of his confinement through release on parole.  When a plaintiff

attacks the fact or duration of his confinement and seeks the remedy of shortened

confinement or immediate release, his claims must be asserted in a petition for writ of

habeas corpus.  *McIntosh v. Untied States Parole Commission*, 115 F.3d 809, 812

(10th Cir. 1997).  "[T]he essence of habeas corpus is an attack by a person in custody

upon the legality of that custody."  *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973).  In

contrast, when an action is brought to correct alleged constitutionally defective parole

procedures, including sex offender classifications, relief is properly sought in a civil

rights action.  *Reed v. McKune*, 298 F.3d 946, 954 (10th Cir. 2002); *Chambers*, 205

F.3d 1237.

To the extent the plaintiff asserts in Claim Two a claim that the defendants'

parole procedures violate the plaintiff's due process rights, the defendants are entitled

to summary judgment.  The plaintiff is not entitled to due process protections in

connection with parole decisions.  To the extent the plaintiff is attempting to shorten the

duration of his confinement, his due process claim may not properly be resolved in an

action under § 1983.  Rather, such a claim must be resolved via an application for writ

of habeas corpus.  To the extent the plaintiff is attempting to shorten the duration of his

confinement, the defendants are entitled to summary judgment on the plaintiff's due

process claim.

### B.  Eighth Amendment

The plaintiff claims also a violation of his Eighth Amendment right to be free from

cruel and unusual punishment.  The Eighth Amendment prohibition against cruel and

unusual punishment requires prison officials to provide humane conditions of

confinement by ensuring that inmates receive adequate food, clothing, shelter, and

14

medical care. **Farmer v. Brennan**, 511 U.S. 825, 832 (1994) (quotations and citations omitted). In addition, the Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of the inmates." **Hudson v. Palmer**, 468 U.S. 517, 526-27 (1984). A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. **Farmer**, 511 U.S. at 834.

A prisoner claiming an Eighth Amendment violation must establish, both objectively and subjectively, that particular conditions of confinement are cruel and unusual. **Wilson v. Seiter**, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to constitute an Eighth Amendment violation. **Id**. at 298. To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. **Farmer**,   511 U.S. at 834. Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference." **Id**. at 837.

It is undisputed that the plaintiff has been classified as an S4 sex offender and is recommended for sex offender treatment. The plaintiff alleges that the defendants will not provide the recommended treatment in a safe environment. In his verified Amended Complaint, the plaintiff states that defendant Hollenbeck convinced the plaintiff that the plaintiff could return to the CDOC to complete a sex offender treatment program, but when he returned the plaintiff was "violently beaten when other prisoners became aware

of his crime." *Amended Complaint*, p. 7.[7]

Although not required by the CDOC, sex offender treatment is available through and strongly encouraged by the CDOC as demonstrated by its comprehensive treatment program and policy statement:  "It is the policy of the [CDOC] to provide specialized treatment . . . to identified sex offenders to reduce the risk of sex offense behavior."  *Motion*, Ex . A-2, first attachment [#163-3], § I.  An inmate must be able to safely participate in such a program--and any CDOC program--regardless of his motivation for doing so.[8]

Viewing the facts in the record in the light most favorable to the plaintiff, he arguably has established the existence of substantial risk of serious harm in attending sex offender treatment.  ***Cf. Riddle v. Mondragon*** , 83 F.3d 1197, 1205 (1996) (declining to find an objectively sufficiently serious deprivation because the plaintiff alleged only that he "was constantly in fear of his life by physical assaults from other inmates who may discover his crime as sex offense at any time" but made no allegation that he was physically attacked or subjected to constant threats of violence).  However, the plaintiff has failed to establish the subjective component of his 8th Amendment claim.  In particular, he does not name Morton, Turner, or Leewaye in the text of Claim Two.  His description of the parties states only that defendants Morton, Turner, and

---

[7]The plaintiff also states that "after a subsequent transfer to a second facility, plaintiff was again severely beaten and sodomized twice."  Id.  However, it is impossible to discern from this vague statement whether the plaintiff was attending a sex offender treatment program at the second facility and whether he was assaulted because other inmates became aware he was a sex offender.

[8]The CDOC's regulations also state that "[i]n 1998 the Colorado Legislature passed the Colorado Lifetime Supervision Act.  Under this sentence offenders must serve the term of their minimum sentence in prison and participate and progress in treatment in order to be considered a candidate for parole."  Id. at § IVG (emphasis added).

Leewaye are "charged under state law" with correctly evaluating, caring for, and treating inmates such as the plaintiff who are classified as sex offenders. *Amended Complaint*, pp. 3-4, ¶¶ 3-6.  There is no allegation or evidence that these defendants knowingly disregarded a risk of serious harm to the plaintiff.

The plaintiff's response [#196] and affidavit [#197] in opposition to the motion for summary judgment does not provide any factual allegations or evidence that any of these defendants actually knew of the existence of the substantial risk of serious harm to the plaintiff in attending sex offender treatment or that any of the defendants have refused to provide the recommended treatment in a safe environment.  To the contrary, the crux of the Amended Complaint and the Response and Affidavit is that the defendants have ignored the plaintiff's many requests to reconsider his classification as an S4 sex offender.[9]

_____

[9] Again, in a separate order issued concurrently with this order, the plaintiff was allowed to supplement his Response.  The supplement includes some of the plaintiff's answers  to the defendants' discovery requests.  The defendants' interrogatories asked the plaintiff to state all facts which he believes support his claims.  *Plaintiff's Motion to Present Additional Evidence Pursuant to Fed.R.Civ.P. Rule 56* [#198], first attachment. The plaintiff's responses concerning defendants Turner and Morton are focused on their failures to reconsider his classification and do not contain any factual statements which would establish deliberate indifference with regard to Claim Two.  Id.

With respect to defendant Leewaye, the plaintiff stated that "Defendant Leewaye has openly admitted that I have contacted him about my inability to **participate** in a Sex Offender Treatment Program."  Id. at p. 11 (emphasis in original).  The plaintiff further stated that "[i]n several letters I have sent to Defendant Leewaye I clearly addressed pertinent matters in the nature of my inability to participate in the Sex Offender Treatment Program in the (IODC) which controls my **new** parole eligibility/suitability, how the (CDOC) was violating controlling agreements stipulated in the 'Settlement Agreement And Mutual Release,' how participation in the (IDOC) Treatment Program would be clearly placing my personal safety in great danger, and several other important topics."  Id. at p. 12.  Finally, the plaintiff stated that "I contend that where I am bringing complaints to Defendant Leewaye about my inability to participate in the treatment program that controls my **new** parole eligibility/suitability Defendant Leewaye owed me the duty to refer every one of those complaints to the Administrator, Programmer, or Diagnostician for the Sex Offender Treatment Program for qualified

"Deliberate indifference requires more than a showing of simple or heightened negligence." ***Verdecia v. Adams***, 327 F.3d 1171, 1175 (10th Cir. 2003).  The plaintiff "must do more than establish that [the defendant] should have known of the risk of harm." ***Id***.  He "[m]ust present evidence supporting an inference that [the defendant] actually knew about a substantial risk of serious harm to his safety." ***Id***.  "Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." ***Id***. at 1175-17 (internal quotations omitted).  Even when viewed in the light most favorable to the plaintiff, the plaintiff's vague statements would not permit a reasonable fact finder to conclude that the plaintiff's Eighth Amendment rights have been violated by the defendants.  Thus, the defendants are entitled to summary judgment on the plaintiff's Eighth Amendment claim.

### C.  Conclusion - Claim Two

The defendants are entitled to summary judgment on Claim Two.  The plaintiff has no right to due process protections concerning discretionary decisions about his parole.  To the extent the plaintiff is attempting to shorten the duration of his confinement, his due process claim may not properly be resolved in an action under §

---

determination(s) and resolution(s) of those complaints." Id. (emphasis in original).

The plaintiff's discovery responses do not establish that Leewaye knew of and disregarded an excessive risk to the plaintiff's safety.  For example, there are no specific factual averments that Leewaye knew there was an obvious risk to the plaintiff's safety, *i.e.* that he knew the plaintiff had previously been assaulted at the CDOC facility for sex offender treatment; that the plaintiff made any requests to Leewaye for further treatment; or that Leewaye denied the plaintiff an opportunity to attend sex offender treatment in a safe environment.  The plaintiff's description of the actions of Leewaye do not support an Eighth Amendment claim.

1983.  Finally, viewing the evidence in the record in the light most favorable to the

plaintiff, a reasonable fact finder could not conclude that the plaintiff's Eighth

Amendment rights have been violated by the defendants.

## VI.  QUALIFIED IMMUNITY

The individual defendants have asserted the defense of qualified immunity to the

extent the plaintiff seeks monetary damages against the individual defendants in their

individual capacities.  The defense of qualified immunity is asserted as to the plaintiff's

claim that he is entitled to successive sex offender classification hearings, appeals, or

re-evaluations.  Qualified immunity shields public officials from civil damages liability if

their actions did not "'violate clearly established statutory or constitutional rights of which

a reasonable person would have known.'"  *Pino v. Higgs*, 75 F.3d 1461, 1467 (10th Cir.

1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity

defense "cannot be analogized to other affirmative defenses because of the interests

implicated in suits against government officials.  Unlike other affirmative defenses,

qualified immunity not only shields a defendant from liability, but is also intended to

protect the defendant from the burdens associated with trial."  *Pueblo Neighborhood

Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). The defense is

available only to defendants sued in their individual capacity. *See Moore v. City of

Wynnewood*, 57 F.3d 924, 929 n. 4 (10th Cir.1995).

A motion for summary judgment asserting qualified immunity must be reviewed

differently from other summary judgment motions.  *See Saucier v. Katz*, 533 U.S. 194,

201 (2001), *overruled in part, Pearson v. Callahan*, ___ U.S. ___, 2009 WL 128768

(2009); *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001), *cert. denied*, 535

U.S. 1056 (2002).  After a defendant asserts qualified immunity, the burden shifts to the

plaintiff.  *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000).  To overcome a claim of qualified immunity, the plaintiff first must establish "that the defendant's actions violated a constitutional or statutory right."  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (noting the court must first decide whether the plaintiff has alleged deprivation of a constitutional right).  This burden means coming forward with specific facts establishing the violation. *Taylor v. Meacham*, 82 F.3d 1556, 1559 (10th Cir.1996).

     If the plaintiff establishes a violation of a constitutional or statutory right, then he must demonstrate that the right at issue was clearly established *at the time* of the defendant's alleged unlawful conduct.  *Albright*, 51 F.3d at 1534.  To demonstrate clearly established law, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts," which find the law to be as the plaintiff maintains.  *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992), *overruled in part, Williams v. City & County of Denver*, 99 F.3d 1009, 1014 - 1015 (10th Cir. 1996).  The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions clearly were prohibited.  *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990)).  In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  *Wilson v. Layne*, 526 U.S. at 615. However,  the plaintiff need not establish a "'precise factual correlation between the then-existing law and the case at hand . . . .'" *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir.1992),

(quoting *Snell v. Tunnell*, 920 F.2d 673, 699 (10th Cir. 1990)).  "[W]hether an official

protected by qualified immunity may be held personally liable for an allegedly unlawful

official action generally turns on the 'objective legal reasonableness' of the action . . .

assessed in light of the legal rules that were 'clearly established' at the time it was

taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations and citations

omitted).

If the plaintiff satisfies both of these elements, then the burden shifts to the

defendant.  Unless the defendant demonstrates that there is no disputed issue of

material fact relevant to the immunity analysis, a motion for summary judgment based

on qualified immunity must be denied. *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th

Cir.1991).  If the plaintiff fails to satisfy either part of the two-pronged inquiry, then the

court must grant qualified immunity. *Albright*, 51 F.3d at 1535.  In short, although the

court must review the evidence in the light most favorable to the plaintiff, a defendant's

assertion of qualified immunity may be overcome only when the record demonstrates

clearly that the plaintiff has satisfied his heavy two-part burden.  In civil rights cases, a

defendant's unlawful conduct must be demonstrated with specificity. *Davis v. Gracey*,

111 F.3d 1472, 1478 (10th Cir. 1997).

In a recent opinion, the United States Supreme Court altered somewhat the

analytical process that may be used when a defendant claims the protection of qualified

immunity. *Pearson v. Callahan*, ___ U.S. ___, 2009 WL 128768 (2009).  Under

*Saucier v. Katz*, a court addressing a claim of qualified immunity must determine first

whether the plaintiff has adduced facts sufficient to make out a constitutional or

statutory violation. *Saucier*, 533 U.S. at 201.  Under *Saucier*, a court must address

and resolve this first question before proceeding to the second step of the analysis, a

determination of whether the claimed constitutional or statutory right was established clearly at the time of the alleged violation. *Id*. In *Pearson*, the Supreme Court held that the sequential two step analysis mandated in *Saucier*

> should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, ___ U.S. ___, ___, 2009 WL 128768, *9.  The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence.  *Id*.

On page seven of his response [#196], the plaintiff responds to the defendants' assertion of qualified immunity.  He argues that the case law and CDOC administrative regulations he has cited, including the due process standard established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), demonstrate that he has a clearly established right to successive sex offender classification hearings, and that the defendants have violated this right.  As discussed previously in this order, the due process standard of *Wolff* applies to the initial sex offender classification decision.  However, there is no authority for the proposition that the Due Process Clause requires the defendants to provide a mechanism for reconsideration of the initial decision to classify the plaintiff as an S4 sex offender.  The plaintiff has not come forward with any such authority.  The plaintiff has not established the violation of a constitutional or statutory right to reconsideration of his sex offender classification, nor has he demonstrated that the right he claims was clearly established *at the time* of the defendant's alleged unlawful action. The defendants are entitled to qualified immunity as to the plaintiff's claim that he is entitled to successive sex offender classification hearings, appeals, or re-evaluations.  On this basis also, the

defendants are entitled to summary judgment on this aspect of the plaintiff's due process claim.

## VII.  DEFENDANT COLORADO DEPARTMENT OF CORRECTIONS

Although the plaintiff names the CDOC in the caption of the Amended Complaint, he does not list the CDOC in the section entitled "Parties," nor does he assert claims against the CDOC.   Under the standards detailed in Section IV.C, above, the plaintiff's allegations do not state any plausible claim for relief against the CDOC.  Again, under 28 U.S.C. § 1915(e)(2)(B)(ii), the court "shall dismiss the case at any time if the court determines that" the action "fails to state a claim on which relief may be granted."  To the extent the Amended Complaint might be read to assert claims against the CDOC, the Amended Complaint should be dismissed as against the CDOC.

## VIII.  CONCLUSION

The allegations in the plaintiff's Amended Complaint do not state plausible claims for relief against the CDOC or for violation of the plaintiff's right to equal protection of the law.  As to all other claims in the plaintiff's Amended Complaint, viewing the facts in the record in the light most favorable to the plaintiff, no reasonable fact finder could find for the plaintiff on any of these claims.  The defendants are entitled to summary judgment on all other claims asserted against them in the plaintiff's Amended Complaint.

## VIII.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That having the consent of the magistrate judge, I withdraw my **Order of Reference to Magistrate Judge** [#11] entered January 9, 2007, as to the pending motion for summary judgment [#163];

2.  That the defendants' **Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56** [#163] filed February 23, 2009, is **GRANTED**;

3.  That under 28 U.S.C. § 1915(e)(2)(B)(ii), the plaintiff's putative equal protection claim is **DISMISSED** for failure to state a claim on which relief can be granted;

4.  That under 28 U.S.C. § 1915(e)(2)(B)(ii), any claims the plaintiff may intend to assert against the Colorado Department of Corrections (CDOC) are **DISMISSED** for failure to state a claim on which relief can be granted;

5.  That **JUDGMENT SHALL ENTER** in favor of the defendants, the Colorado Department of Corrections, Peggy Heil, Paul Hollenbeck, Don Morton, Larry Turner, and Michael Leewaye, against the plaintiff, Daniel E. Murphy;

6.  That defendants are **AWARDED** their costs to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

7.  That this case is **DISMISSED**.

Dated September 10, 2009, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge